# Cases

# SECOND DEPARTMENT

IN THE

# APPELLATE DIVISION,

## November, 1900.

---

ANNIE BELL, Respondent, *v.* NEW JERSEY STEAMBOAT COMPANY, Appellant.

*Duty of a steamboat navigating the Hudson river to prevent injury, by the suction and swells caused by it, to crafts moored at docks on its course.*

In an action brought by the owner of a canal boat, which, while moored to a dock at Coxsackie on the Hudson river, was driven against the dock by the suction and swells of the defendant's steamboat with such force that she was crushed and sunk, it is error for the court to charge "that, in navigating rivers where small boats are accustomed to ply and may be reasonably expected, steamboats are bound to navigate with caution and at a rate of speed sufficiently slow to avoid danger from her attending swells." A steamboat is not bound under all circumstances, as matter of law, to proceed at such a rate of speed as to avoid all danger to other vessels from her swells.

*Semble,* that the court may properly charge that "it is the duty of steam vessels passing near docks or other mooring places to pass at such a rate of speed that no danger will be likely to result from her swells, provided she has timely notice of the presence of other vessels at such docks as are likely to be damaged from the suction and swells of such boats."

APPEAL by the defendant, the New Jersey Steamboat Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Greene on the 27th day of November, 1899, upon the verdict of a jury, and also from so much of an order entered in said clerk's office on the 24th day of November, 1899, as denied the defendant's motion for a new trial made upon the minutes.

This appeal was transferred from the third department to the second department.

*W. P. Prentice,* for the appellant.

*F. H. Osborn,* for the respondent.

GOODRICH, P. J.:

The plaintiff's canal boat, *Dema and Willie,* laden with 255 tons of molding sand, sank during the evening of May 5, 1898, while moored at a dock at Coxsackie on the Hudson river. The plaintiff alleges that the defendant's servants, who were in charge of the steamboat *Adirondack,* "negligently, carelessly and unskilfully" navigated the steamboat "in approaching and passing too close" to the canal boat "at too great speed," so that the canal boat was "forced and driven against said dock with great violence by the suction and swells caused by said steamboat," and crushed so that she sank.

The evidence was very conflicting and necessitated a submission of the issues to the jury. There was sufficient evidence to justify the verdict which they rendered for the plaintiff, and we should not disturb such verdict except for what appears to be clear error in the charge of the court. The court had correctly charged that the question as to the defendant's negligence was, "Was the defendant's boat proceeding in an ordinarily safe way, for that is the law. It is not liable for any injury which it may cause, but the law is that one is liable in the management of his property for the injury to the property of another when he is not conducting his own business in an ordinarily safe and prudent manner. That is the law of negligence. It arises out of the principle that every man must so use his own property as not to injure the property of another. Was the defendant's boat on this occasion proceeding, when it came in sight of, and passed by, the plaintiff's boat in an ordinary and safe manner. If it was using proper care for the protection of the plaintiff's boat moored there at her dock, then whatever injury may have occurred to the plaintiff's boat it is one for which the defendant is not responsible."

Not content with this plain statement of the law, the plaintiff's counsel made further requests to charge, and the court charged as follows: "Mr. Osborn: I ask you to charge that it is the duty of steam vessels passing near docks or other mooring places, to pass at such a rate of speed that no danger will be likely to result from her swells, provided she has timely notice of the presence of other vessels at such docks as are likely to be damaged from the suction and

swells of such boats. The Court: I so charge. Mr. Osborn: Also, that in navigating rivers where small boats are accustomed to ply and may be reasonably expected, steamboats are bound to navigate with caution and at a rate of speed sufficiently slow to avoid danger from her attending swells. The Court: I so charge. Defendant excepted." The first of these requests was all that the plaintiff was entitled to, and was a renewed statement of the law already laid down by the court. The second request charged, however, was clearly erroneous. It vitiated the former charge and in effect took from the jury all right of deciding the question already submitted by the court, viz., whether or not the defendant was negligent in the management and navigation of the steamboat, and instructed the jury that the defendant's steamboat under all circumstances was bound as matter of law to proceed at such a rate of speed as to avoid all danger to other vessels from her swells. With this instruction sounding in their ears as the last delivery of the court, it would have been singular if the jury had come to any other conclusion than that the defendant's steamboat was negligent in proceeding at the rate of speed at which she was actually going.

There is no hard and fast rule as to the rate of speed at which a steamboat must navigate the Hudson river at the place in question, though there is a provision of one of our State statutes forbidding steamboats to pass the docks and wharves in Albany at a rate of speed greater than six miles an hour. (3 R. S. [9th ed.] 2070.) The absence of any statutory regulation of speed at the place in question is significant.

The regulations for preventing collisions in certain rivers of the United States (30 U. S. Stat. at Large, 96), including the Hudson river at the place in question, contain no provision as to speed of vessels. There is a provision that in narrow channels a steam vessel shall, when it is safe and practicable, keep to that side of the fair way or mid-channel which lies on the starboard of the vessel, but as to speed the regulations are silent, leaving the general rule of navigation to be applied to all cases. This rule is well stated by Judge HUNT in the case of *The Daniel Drew* in the United States Circuit Court (13 Blatchf. 523), where he said (pp. 527, 528): " There is no law which limits the space a boat may occupy, or which prescribes how fast it may go, or how much swell it may cause, or

how near it may pass to another boat. The rule of permission or of restriction depends in each case upon the reasonableness of the thing done. A dull sailing tow may not occupy unreasonably the entire channel of the river, and thus impede its navigation by all other vessels. A leviathan may not rush through the water with a speed that will overwhelm in its surges all the craft ordinarily to be found upon the river. Nor is a large vessel, under all circumstances, absolutely liable for an injury caused by its swells to an inferior vessel. The waters are open to the use of all kinds of crafts, large as well as small, and while the rights of the smaller are to be carefully guarded, they are not to be made a pretence for excluding or preventing the practical use of larger or different vessels. \* \* \* If an overtaking and passing vessel, in prudent navigation, creates swell and suction, arrangements must be made that the boats in a tow shall not be injured thereby. If the swell and suction created by the passing vessel are those to be expected in the ordinary navigation of a rapid vessel, which is managed with prudence and equipped and constructed in a suitable manner, and if the passing vessel has no reason to apprehend that she will do an injury, and a tow is injured thereby, the passing vessel is not responsible. She has but exercised her lawful rights, and the loss must be borne by the injured party." After reviewing authorities which had been cited, Judge Hunt closed the opinion in these words : " I see nothing in these cases in hostility to the principles hereinbefore announced. They do not countenance the idea that the superior vessel is necessarily and absolutely liable to the inferior, in the event of an injury from the swell of the former. They place the decision, in every instance, upon the question of negligence or improper management in the larger vessel. The principles of this opinion are in entire harmony with those laid down in *The Alleghany* (9 Wall. 522), and in *The Syracuse* (Id. 672). The cases of *The Leo* (3 Benedict, 569) and *The C. H. Northam* (7 id. 249), I have carefully considered."

It was, therefore, error for the court to charge the latter request above cited, and for this reason the judgment should be reversed.

All concurred.

Judgment and order reversed and new trial granted, costs to abide the event.